582 A.2d 1367

**Richard G. VINCENT, Appellant,**

**v.**

**FULLER COMPANY and Gatz Corporation, Individually and Jointly, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 19, 1990.

Filed Dec. 4, 1990.

Petition for Allowance of Appeal Granted June 7, 1991.

Craig J. Smith, Easton, for appellant.

Robert C. Brown, Easton, for appellees.

Before CAVANAUGH, WIEAND and HUDOCK, JJ.

HUDOCK, Judge:

This is an appeal from the order of the Court of Common Pleas of Northampton County dismissing Appellant's statutory causes of action for discriminatory lay-off and discriminatory discharge as time-barred and granting Appellee's motion for summary judgment as to all of the common law causes of action. We affirm in part and reverse in part.

The complicated facts and procedural history, as ably summarized by the trial court, are as follows: On December 17, 1973, Appellant was hired by Fuller Company (Fuller), a wholly-owned subsidiary of GATX Corporation (GATX), for the position of Manager of Engineering Services. After seven years, Appellant became Manager of Administration of the Process, Products, and Projects Division. In November 1982, Fuller eliminated Appellant's position pursuant to an alleged workforce reduction. Consequently, Appellant was "laid-off" effective December 3, 1982.[1] At the time of the lay-off, Appellant was fifty-eight years old. On December 3, 1984, Appellant's lay-off became a permanent termination. Appellant contends that his lay-off and subsequent

---

1. Fuller contended that the company designated the separation from employment a "lay-off" so that Appellant would qualify to receive a vested deferred pension at age sixty-five.

termination occurred solely because of his age rather than being economically motivated.

On March 15, 1983, Appellant filed a verified complaint with the Equal Employment Opportunity Commission (EEOC), alleging discrimination under the federal Age Discrimination in Employment Act (ADEA). The EEOC forwarded a copy of this complaint to the state Human Relations Commission (HRC). The EEOC did not proceed to process the complaint under the ADEA. On December 3, 1984, Appellant filed suit in federal court, alleging age discrimination in violation of ADEA. He discontinued this suit, without prejudice, on February 26, 1985.

By letter dated February 19, 1985, Appellant, through counsel, filed a copy of his complaint which had been previously filed with the EEOC, with the HRC. The letter, which was not verified by Appellant, stated that Appellant's lay-off became permanent on December 3, 1984. Thus, the letter stated that, for purposes of the Pennsylvania Human Relations Act (PHRA), December 3, 1984 was the date the most recent discriminatory action took place. On May 11, 1985, Appellant filed an amended verified complaint with the HRC.

On February 26, 1985, Appellant filed an original complaint in the Court of Common Pleas of Northampton County alleging, *inter alia*, causes of action for age discrimination and breach of implied contract terms of employment. An amended complaint was filed on June 13, 1985. By order of court (Franciosa, J.) dated November 22, 1985, the complaint was dismissed for lack of subject matter jurisdiction.

A second amended complaint was filed on March 4, 1986, alleging, *inter alia*, age discrimination and breach of implied contract of employment. In this complaint, Appellant averred that Fuller and GATX provided him with publications entitled "GATX Personnel Policies and Practices," and that Fuller and GATX's breach of various provisions therein formed the basis, in part, for the causes of action. Preliminary objections were filed on March 24, 1986. By order of

court (Van Antwerpen, J.) dated June 26, 1986, all preliminary objections were dismissed.

On October 11, 1988, Fuller and GATX filed a motion for summary judgment. The trial court (McFadden, J.) granted the motion for summary judgment only as to the claims relating to policy 4.01 of the publication, dealing with non-union salaried employees with ten or more years of service. The motion was denied insofar as it sought dismissal of Appellant's common law action for breach of contract and the statutory action based on age discrimination.

On February 21, 1989 a pre-trial conference was held and the case was placed on the June 1989 trial list. The case was then continued several times. On October 13, 1989, Fuller and GATX filed a Motion for Pre–Trial Rulings containing a request for summary judgment and a request to reconsider the previous summary judgment decision of Judge McFadden. After hearing argument on the matter, President Judge Alfred T. Williams, Jr., entered a final order on February 28, 1990, dismissing all of Appellant's outstanding causes of action. It is from this order that Appellant now appeals. Appellant raises several issues which will be dealt with *in seriatim.*

Appellant first claims that the trial court (Williams, P.J.) abused its discretion in considering Fuller and GATX's second motion for summary judgment because the filing of such a motion violated Rule 1035 of the Pennsylvania Rules of Civil Procedure in that it improperly delayed the trial of the case. Rule 1035 provides as follows:

(a) After the pleadings are closed, but *within such time as not to delay trial,* any party may move for summary judgment on the pleadings and any depositions, answers to interrogatories, admissions on file and supporting affidavits.

Pa.R.C.P. No. 1035, 42 Pa.C.S.A.

In the absence of specific case law prohibiting the serial filing of motions for summary judgment, this Court will not find that Fuller and GATX's second motion for summary

judgment delayed the trial of the matter. The record reveals that this case was continued several times and that the second filing by the above-mentioned parties did not cause additional delay. This is especially true since the issue regarding whether the alleged violation of the PHRA was time-barred presented a new legal issue and, in the interest of judicial economy, the trial court saw fit to re-examine the motion in light of newly decided case law.

Appellant next claims that the President Judge erred as a matter of law and abused the court's discretion in reconsidering and reversing the previous denial of Fuller and GATX's motion for summary judgment, as it applied to Appellant's common law action for breach of contract. It is generally recognized in Pennsylvania that, "absent some new evidence, it is improper for a trial judge to overrule an interlocutory order of another judge in the same court in the same case." *Farber v. Engle*, 106 Pa.Cmwlth. 173, 177, 525 A.2d 864, 866 (1987). Indeed, President Judge Williams recognized this to be the law in Pennsylvania. (Trial Court Opinion at p. 7). The purpose underlying this rule is that there must be some finality to the determination of all pre-trial applications so that judicial economy and efficiency can be maintained. *Reifinger v. Holiday Inns, Inc.*, 315 Pa.Super. 147, 461 A.2d 839 (1983).

Another principle of Pennsylvania law, however, becomes applicable in the instant case. Where no further factual developments have occurred from the time of the first pre-trial motion, a second pre-trial motion may be entertained by the trial court to consider "any relevant legal authority decided in the interim period." *See generally Diandrea v. Reliance Savings and Loan Association*, 310 Pa.Super. 537, 456 A.2d 1066 (1983). The underlying purpose of this principle of law is self-evident; if new case law is decided subsequent to an earlier ruling by the Court and it clarifies a principle of substantive law or overrules an important case relied upon by one of the parties at an earlier stage of the proceedings, judicial economy and effi-

ciency is best served by consideration of the new law prior
to trial.

In the instant case, the recent decisions of the Pennsylva-
nia Supreme Court in *Morosetti v. Louisiana Land and
Exploration Company*, 522 Pa. 492, 564 A.2d 151 (1989)
and *Paul v. Lankenau Hospital*, 524 Pa. 90, 569 A.2d 346
(1990), are directly relevant to the instant case and were
decided and reported between the time of Judge McFad-
den's decision and the scheduled time for trial. These cases
were relevant on the merits of whether an alleged failure to
follow a corporate policy would permit a cause of action for
breach of an implied contract. Thus, Judge Williams did
not commit an abuse of discretion when he reconsidered the
previous motion for summary judgment. We must now
consider whether Judge Williams erred in reversing the
denial of the motion for summary judgment on the merits.

 When reviewing the grant or denial of a motion for
summary judgment, an appellate court must accept as true
all well-pleaded facts in the non-moving party's pleadings,
depositions, answers to interrogatories and admissions on
file, giving the nonmoving party the benefit of all reason-
able inferences to be drawn therefrom. To uphold summa-
ry judgment, there must be not only an absence of genuine
issues of fact, but also entitlement of judgment as a matter
of law. *Rossi v. Pennsylvania State University*, 340 Pa.
Super. 39, 489 A.2d 828 (1985); *Curry v. Estate of Thomp-
son*, 332 Pa.Super. 364, 481 A.2d 658 (1984). Initially, it
must be noted that Appellant's common law causes of
action do not claim that Fuller and GATX breached an
implied contract created by corporate policy for permanent
and continuous employment, but that the breach was
caused by the failure of those companies to find alternative
employment for laid-off employees pursuant to Corporate
Policy 2.09. Thus, Appellant, in his complaint, is merely
urging this Court to find that a failure to follow a corporate
policy creates a common law cause of action.

In the recently decided *Morosetti, supra*, the Pennsylva-
nia Supreme Court restricted the ability of a discharged

employee to bring an action against his former employer solely on the basis of a company policy:

it is not sufficient to show [the employer] had a policy. It must be shown that [the employer] offered it as binding terms of employment. A company may indeed have a policy under which they intend to act, given certain circumstances or events, but unless they communicate that policy as part of a definite offer of employment they are free to change as events may require.

*Id.,* 522 Pa. at 496, 564 A.2d at 153.

Nowhere in the record is there deposition testimony or an affidavit filed by Appellant demonstrating that Corporate Policy 2.09 was part of a definite offer of employment when he was hired by Fuller or that that provision was a corporate policy, of which he subsequently learned, which caused him to continue his employment with Fuller as opposed to changing employment or otherwise altering his employment situation. On the contrary, the record contains facts which demonstrate the corporate policy could not reasonably be relied upon by Appellant or other employees to constitute a binding contract offered by Fuller, obligating it to find alternative employment in all cases of laid-off employees. Appellant testified that Corporate Policy 2.09 was contained in a blue three-ring binder which was the property of Fuller and which had been given to him in his management position and to other "key personnel." (Vincent Deposition 3/2/87 at pp. 77–78, 81–96). Appellant admitted the Policy and Procedure binder was a "management tool" which was not distributed to all employees. (Vincent Deposition 3/2/87 at p. 102).

Thus, the record in the instant case does not reveal any genuine issues of material fact from which a fact-finder could find Fuller's Corporate Policy 2.09 was communicated as an offer or inducement to all employees to accept or continue employment with the company. Appellant simply had possession of a Policy and Procedure Manual, in his capacity as a management employee, and, on the basis of the record before this Court, cannot successfully maintain

that the mere existence of the manual created a binding and enforceable contract which altered Appellant's at-will employment relationship. The mere existence of a corporate policy, without more, does not create a cause of action for alleged failure to follow that policy. *Morosetti, supra; Murphy v. Cartex Corp.*, 377 Pa.Super. 181, 546 A.2d 1217 (1988). Therefore, Judge Williams did not err in granting the motion for summary judgment.

Appellant also contends that his detrimental reliance on Corporate Policy 2.09 supports a common law cause of action for breach of an implied contract on the theory of estoppel. We do not agree. In *Paul v. Lankenau Hospital, supra,* the Pennsylvania Supreme Court held that the doctrine of equitable estoppel does not provide an exception to the presumption of an at-will employment relation. Since the doctrine is not available in regard to the termination of employment, it follows that the same doctrine cannot operate to establish a cause of action based upon an employee's detrimental reliance on a promise of the employer to find alternative employment for a terminated employee. The fact that Appellant's termination by Fuller was characterized as a lay-off is of no consequence. Appellant cannot rely on this doctrine to support a common law action for breach of an implied contract of employment.

Appellant's final claim is that the trial court erred as a matter of law and abused its discretion in dismissing his cause of action under the PHRA. As stated above, Appellant first filed a verified complaint with the EEOC on March 13, 1983. The EEOC transmitted this complaint to the HRC shortly thereafter. Such a transmittal constitutes a "filing" with the HRC within the meaning of the PHRA. *Lukus v. Westinghouse Electric Corporation,* 276 Pa.Super. 232, 419 A.2d 431 (1980). At the time of Appellant's lay-off, the time limitation for filing a complaint under the PHRA was ninety days. 43 P.S. § 959(g).[2] Since this

---

**2.** In 1986, the statute was amended to extend the filing deadline from ninety to one hundred eighty days. Act of December 16, 1986, P.L. 1626, § 10, 43 P.S. § 959(g) (Purdon 1990).

complaint was clearly not filed within the ninety day deadline, it is time-barred. Thus, any statutory cause of action arising from the alleged discriminatory lay-off is barred by the statute of limitations.

On February 19, 1985, Appellant re-filed the March 13, 1983 complaint with the HRC for age discrimination in the termination of his employment. Along with a copy of the verified complaint, Appellant's counsel enclosed a letter, which was not verified by Appellant, stating that the alleged discriminatory lay-off had become permanent on December 4, 1984 and that that date represented the most recent discriminatory act by Appellee. Appellant filed an amended verified complaint on May 11, 1985. Fuller and GATX maintain that the date of filing for PHRA purposes should be the date the verified complaint was filed. They contend that the filing of an unverified complaint should not be permitted to toll the limitation period for filing a discrimination complaint and thereby extend the ninety day filing limitation. The trial court agreed, concluded that the jurisdiction of the HRC was never properly invoked, and dismissed Appellant's cause of action. We conclude that such a dismissal was improper.

In *Murphy v. Com., Pennsylvania Human Relations Commission*, 506 Pa. 549, 486 A.2d 388 (1985), the Pennsylvania Supreme Court stated:

> [b]y statute the jurisdiction of the Human Relations Commission may be invoked by filing a verified complaint which shall set forth the particulars of the discriminatory practice complained of. 43 P.S. § 959. (Citation omitted). A filing which does not comply with these strictures improperly invokes the Commission's jurisdiction, and is in fact a nullity.

*Id.* 506 Pa. at 557, 486 A.2d 388, 392 (1985).

Thus, it is clear in Pennsylvania that a complaint filed with the HRC that does not set forth the particulars concerning a discriminatory practice cannot operate to invoke jurisdiction. The question with which we are presented is

whether unverified information submitted to the HRC, along with a copy of a previously verified complaint, can operate to invoke jurisdiction. This issue was discussed by the Pennsylvania Supreme Court in *Pennsylvania Human Relations Commission v. School District of Philadelphia*, 522 Pa. 436, 562 A.2d 313 (1989), wherein it was argued that a verified complaint which was filed with the HRC more than ninety days after an alleged act of discrimination was untimely even though a complaint questionnaire had been completed and received by the HRC six months earlier. Unfortunately, this issue equally divided the Supreme Court and, therefore, we are left without precedential guidance. Cogent remarks in the opinion in support of reversal, however, lead us to conclude that denying jurisdiction to the HRC solely because Appellant provided unverified information, regarding his change in employment status with Appellee, when he re-filed his *verified* complaint improperly elevates form over substance and denies a complaining party the right to inquiry into alleged discrimination based solely on a technicality.

Admittedly, such a conclusion relies on an analogy to civil practice and procedure in regard to the significance of a verification requirement. *See In re Johnson*, 509 Pa. 347, 502 A.2d 142 (1985). However, the legislature has seen fit to delegate to the HRC the power to adopt rules and regulations concerning the practice and procedure governing the filing of a complaint under the PHRA. One such regulation specifically provides that any non-conformity in a complaint can be cured by amendment within a reasonable time. 16 Pa.Code § 42.11(d). Thus, the agency's own regulations permit such an amendment.

Furthermore, one need only look to the relevant federal case law regarding the EEOC, an act which the Pennsylvania Supreme Court has characterized as the "federal analogue" to the PHRA. *General Electric Corp. v. Commonwealth, Pennsylvania Human Relations Commission*, 469 Pa. 292, 365 A.2d 649 (1976). That case law has consistently held that the lack of a verification is not a jurisdictional

defect but a technical defect that can be cured by amendment. *See e.g., Weeks v. Southern Bell Telephone and Telegraph Co.*, 408 F.2d 228 (5th Cir.1969) (complaint that was timely filed could be amended after the running of the statutory filing period to include the necessary verification). Thus, the trial court erred in dismissing Appellant's statutory cause of action as being time-barred.

The Order granting summary judgment is affirmed in part and reversed in part. The case is remanded for further proceedings. Jurisdiction is relinquished.